IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| FORACE RAHEEM BROWN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 113-168 |
| | ) | (Formerly CR 111-182) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate at the Federal Correctional Institution in Estill, South Carolina, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

## I. BACKGROUND

### A. Indictment

On May 4, 2011, the grand jury in the Southern District of Georgia charged Petitioner with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). United States v. Brown, CR 111-182, doc. no. 1 (S.D. Ga. May 4, 2011) ("CR 111-182"). Petitioner retained attorney Peter Johnson to represent him. (Id., doc. nos. 5, 7.)

### B. Change of Plea

On September 12, 2011, the day of his scheduled trial, Petitioner instead pled guilty to the single-count indictment without a plea agreement before United States District Judge J.

Randal Hall. (Id., doc. nos. 21-23.) During the change of plea hearing, Judge Hall established Petitioner's competence to enter a guilty plea if he so desired. (Id., doc. no. 42 ("Rule 11 Tr."), pp. 5-8.) Petitioner testified under oath that he had previously received treatment and medication for depression, but was not on any medication during that hearing and clearly understood where and why he was in the hearing. (Id. at 7-8.) Petitioner also testified under oath that he was satisfied with the assistance he had received from Mr. Johnson. (Id. at 8-9.)

Judge Hall reviewed the charge in Petitioner's case and the possible statutory penalties for the charge to which Petitioner was pleading guilty. (Id. at 11.) Judge Hall informed Petitioner that a conviction on a § 922(g)(1) charge carried a statutory maximum sentence of ten years. (Id.) When asked, Petitioner confirmed that he understood the possible penalties. (Id. at 11-12.) Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed that he clearly understood those rights. (Id. at 8-11.) Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. (Id.) Petitioner also affirmed that no one had forced or pressured him to plead guilty, or made him any promises to induce him to plead guilty. (Id. at 11, 19.) Nor had anyone promised, predicted, or prophesied that Petitioner would receive a specific sentence. (Id. at 15.)

Next, Judge Hall heard a factual basis for Petitioner's guilty plea from Special Agent Ron Rhodes with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. (Id. at 16-18.) SA Rhodes testified as to the circumstances of Richmond County Narcotics Investigator James Swint's stop of Petitioner on April 18, 2011, as told to him by Inv. Swint. (Id.) SA Rhodes testified that Inv. Swint made contact with Petitioner and another individual, who was a known narcotics distributor, after he observed a hand-to-hand transaction. (Id.) Inv. Swint asked both

2

individuals to place their hands on the vehicle and began a pat-down of Petitioner. (Id.) Petitioner and Inv. Swint got into a struggle after Petitioner took his hands off the car, removed a firearm from his waistband, and began to turn around. (Id.) Petitioner punched Inv. Swint and fled. (Id.) He was located later that day and taken into custody. (Id.) The firearm was recovered from the scene, and SA Rhodes was later able to determine that Petitioner had two prior felony convictions in the Superior Court of Richmond County. (Id.)

Petitioner affirmed that the testimony of SA Rhodes was factually correct as to his possession of the firearm identified in the indictment and his two felony convictions at the time he was in possession of the firearm. (Id. at 18-19.) Petitioner and Mr. Johnson clarified that Petitioner's only dispute with the statement of facts was that the other individual gave Petitioner the firearm when Inv. Swint approached and that he was removing the firearm from his waistband to conceal it, not to assault Inv. Swint. (Id. at 18-20.) However, Petitioner did not dispute either that he (1) possessed the firearm or (2) had been convicted of two prior felonies when he possessed the firearm. (Id. at 18-19.) Petitioner also told Judge Hall he was guilty of, and wanted to plead to, the single-count indictment. (Id. at 20.) Mr. Johnson also stated his belief that Petitioner's plea of guilty was voluntary. (Id. at 19.)

Judge Hall then summarized the proceedings as follows:

> [Petitioner] is competent. He fully understands the charge against him. There is an independent factual basis for his plea of guilty on this charge that contains each of the essential elements of the offense. He knows the maximum punishment that could be imposed on the charge, and he knows his jury rights which he has knowingly and voluntarily waived.
>
> I further find that [Petitioner's] decision to plea guilty this morning was voluntary, knowing, and not the result of any force pressure, threats or promises. Therefore, the plea is accepted and [Petitioner] is adjudged guilty of Count One of the indictment based upon his plea of guilty.

(Id. at 21.)

### C. Sentencing

The United States Probation Office then prepared a Presentence Investigation Report ("PSI") which set Petitioner's Total Offense Level at 28, Criminal History Category at III, and an advisory Sentencing Guidelines range for imprisonment at 97-120 months. (PSI ¶¶ 24, 32, 50.) Petitioner stated that he was recently treated at Serenity Behavioral Health in Augusta, Georgia, for approximately one year, but personnel at Serenity were unable to locate a record regarding Petitioner's treatment. (Id. ¶¶ 41.) Petitioner filed an objection to the PSI, which was resolved prior to sentencing. (See PSI Addendum; CR 111-182, doc. no.43, ("Sent. Tr."), p. 4.) At sentencing, Judge Hall adopted the factual statements in the PSI and the recommended Guidelines range of 97-120 months. (Sent. Tr., p. 4.)

Also at sentencing, Judge Hall heard from defense counsel, who presented mitigating evidence. (Id. at 5-9.) Mr. Johnson provided a summary of Petitioner's version of events, stating that Petitioner was not trying to pull the firearm on the officer to commit an assault. (Id. at 5-6.) Petitioner's sister and aunt both testified that Petitioner was on medication and receiving treatment for depression and anxiety. (Id. at 7-8.) Mr. Johnson stated:

> As the family has referenced [sic]. There are mental health issues here. [Petitioner] has been struggling apparently all his life with depression, anxiety. He is currently taking medication for the depression and for bipolar disorder. I think that might be a contributing factor to what occurred here back on April of last year because at that time [Petitioner] was not compliant with his medication. And it was really just an issue of he was unable to actually get out to Serenity to get the medication.
>
> He had been living with his mother and they had been taken care of him [sic]. But at some point he just decided to move out, you know, on his own. But then he had these transportation problems. And so he just kind of quit taking his medication as well. And he needed it.

(Id. at 8.)

On February 1, 2012, Judge Hall imposed a sentence of 118 months imprisonment. (Id. at 14; CR 111-182, doc. no. 29.) Judge Hall also informed Petitioner that he had a right to appeal his sentence within fourteen days and a failure to appeal within the fourteen days would be a waiver of that right. (Id., doc. no. 43, p. 17.) Judgment was entered the following day, February 2, 2012. (Id., doc. no. 29.)

### D. Subsequent Proceedings

Petitioner filed a notice of appeal on November 15, 2012. (Id., doc. no. 30.) The Eleventh Circuit appointed attorney Ashleigh Merchant to represent Petitioner on appeal. (Id., doc. no. 41-1.) After the government moved to dismiss the appeal as untimely, the Eleventh Circuit construed Petitioner's untimely notice as an attempt to submit a § 2255 motion and transferred the motion to this Court to be docketed as a § 2255 motion. (Id., doc. no. 44.)

In his § 2255 motion, Petitioner raises several grounds for relief:

(1) Counsel provided ineffective assistance because he did not request a psychiatric examination based on Petitioner's medical records;

(2) Judge Hall erred because:

   (a) he did not allow defense counsel to seek a psychiatric examination; and

   (b) he relied on Petitioner's statements as to his own mental state rather than those of a psychiatric expert in assessing Petitioner's competence to plead guilty; and

(3) the government failed to prove that Petitioner was a previously convicted felon in possession.

(Doc. no. 1, pp. 3-6.) Petitioner attaches to his § 2255 motion several documents concerning his in-custody suicide attempt that occurred nine days after he entered his guilty plea and his psychological evaluation conducted by the Bureau of Prisons after he was sentenced in this case.

5

(Id. at 11-21.) Petitioner requests that he be resentenced to a lesser term of imprisonment. (Id. at 7.)

Respondent contends that Petitioner's § 2255 motion should be denied for several reasons. (Doc. no. 7.) First, Petitioner's claim that the government failed to prove he was a previously convicted felon in possession is procedurally barred because Petitioner failed to raise it at trial and on direct appeal, but even if it were not barred, it is without merit. (Id. at 20.) Additionally, Petitioner's claims that Judge Hall erred are procedurally barred, waived by entry of the guilty plea, and without merit. (Id. at 16-20.) Lastly, Petitioner's claim pertaining to his attorney's alleged ineffective assistance is without merit. (Id. at 11-15.)

## II. DISCUSSION

### A. There Is No Need For an Evidentiary Hearing.

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. U.S., 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised.

Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Because Petitioner's claims are procedurally barred, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

**B.   Petitioner's Claims Alleging Error by Judge Hall Are Procedurally Defaulted.**

A prisoner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)). Generally, where a petitioner seeks collateral relief based on trial errors to which no contemporaneous objection was made at trial, Frady, 456 U.S. at 167-68, or on direct appeal, "it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted). However, despite these restrictions on raising previously available challenges, ineffective assistance of counsel claims may be raised for the first time in collateral proceedings. Massaro v. United States, 538 U.S. 500, 509 (2003).

Failure to raise a claim at trial or on direct appeal constitutes a double default and to overcome a procedural bar or double default, Petitioner "must show both (1) cause excusing his double procedural default, and (2) actual prejudice resulting from the errors of which he complains." Brown, 720 F.3d at 1333 (citation omitted). "Cause" requires a showing of some external impediment preventing counsel or Petitioner from raising the claim previously. See Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467,

497 (1991)). To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." Frady, 456 U.S. at 170.

In the alternative, "[t]he merits of a procedurally defaulted claim may be reached, in very narrowly defined circumstances, if failure to address the claim would result in a 'fundamental miscarriage of justice.'" Berry v. United States, 468 F. App'x 924, 925 (11th Cir. 2012). A fundamental miscarriage of justice has occurred where "a constitutional violation has resulted in the conviction of someone who is actually innocent." Murray v. Carrier, 477 U.S. 478, 495-96 (1986); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000). Actual innocence "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." McQuiggin v. Perkins, 133 S.Ct. 1924, 1933 (2013) (internal quotations omitted) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)); see also McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011).

Here, Petitioner has not established lack of availability, cause, actual prejudice, or actual innocence. First, with respect to lack of availability, the claims that Judge Hall erred by failing to obtain and consider a mental evaluation of Petitioner could have been reviewed on direct appeal without further factual development. Indeed, Petitioner does not contend otherwise. Therefore, his claims were "available" on direct appeal. See Mills, 36 F.3d at 1055. Accordingly, the claims are not cognizable unless Petitioner can overcome the procedural bar by establishing cause and prejudice or by showing actual innocence. See Brown, 720 F.3d at 1333; McKay, 657 F.3d at 1196.

Second, Petitioner has not alleged any cause as to his failure to assert these claims on direct appeal. See Weeks, 52 F.3d at 1561. Even if the Court were to assume Petitioner's alleged mental incapacity would qualify as an external impediment, see Thomas v. Alabama, No. 2:08-CV-891-WHA WO, 2011 WL 294223, at *14 (M.D. Ala. Jan. 7, 2011) report and recommendation adopted, No. 2:08CV891-WHA, 2011 WL 288732 (M.D. Ala. Jan. 27, 2011) (collecting cases discussing mental health conditions as cause for excusing procedural default), Petitioner was represented by counsel on appeal and Petitioner does not identify any external impediment that would have prevented counsel from raising the issue in a timely appeal.

Third, Petitioner cannot demonstrate actual prejudice based on Judge Hall's alleged errors in light of the overwhelming evidence of Petitioner's sanity at the time of the offense and competence when entering his guilty plea. Frady, 456 U.S. at 170. Perhaps the best evidence of Petitioner's sanity is his explanation during the change of plea hearing concerning the struggle with Inv. Swint. Petitioner testified that the other individual stopped by Inv. Swint gave him the firearm and he was attempting to hide it, not grab it to assault Inv. Swint. (Rule 11 Tr., pp. 18-19.) However, Petitioner admitted that he was in possession of the firearm when Inv. Swint approached him and that he had at least one prior felony conviction. (Id.; PSI ¶¶ 12; Sent. Tr., p. 9.) This testimony is detailed and consistent, and it intelligently emphasizes allegations that could be helpful in mitigation, i.e., that the other individual gave Petitioner the firearm as Inv. Swint approached and Petitioner was trying to hide the firearm, not use it. An incompetent person clearly could not offer such nuanced and thoughtful testimony. Compare Ake v. Oklahoma, 470 U.S. 68, 71 (1985) (defendant's bizarre behavior in open court, including his claim that he was the "sword of vengeance of the Lord," caused the trial judge to *sua sponte* order that he be evaluated by a psychiatrist).

Moreover, Petitioner responded intelligently and appropriately to questions raised by Judge Hall at his change of plea hearing and sentencing, and in the interview with the probation officer. At his change of plea hearing, Petitioner testified under oath that he had previously received treatment and medication for depression, but was not on any medication during that hearing and clearly understood where and why he was in the hearing. (Rule 11 Tr., pp. 7-8.) Additionally, Petitioner testified under oath that he was satisfied with the assistance he had received from Mr. Johnson. (Id. at 8-9.) While Petitioner would have the Court ignore his responses to Judge Hall's questions at the change of plea hearing and at sentencing, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

To the extent Petitioner is arguing that this information about his diagnosis and treatment for depression would have led to a different outcome at sentencing, this information was known to all parties and Judge Hall well before sentencing. Petitioner, Mr. Johnson, and Petitioner's family raised this issue at Petitioner's change of plea hearing and at sentencing, and the PSI contained Petitioner's mental health information. (See Rule 11 Tr., pp. 8-9; PSI ¶¶40-41; Sent. Tr., pp. 5-9.) Judge Hall found Petitioner competent with this information about his mental health before him, and therefore, Petitioner cannot show a reasonable probability that Judge Hall would have found him to be incompetent if he had allowed Mr. Johnson to seek a mental examination of Petitioner. (See Rule 11 Tr., p. 21.) Petitioner's argument that the Court did not allow Mr. Johnson to seek a mental examination directly contradicts his claim that Mr. Johnson provided ineffective assistance because he did not seek a mental examination. There is no indication in the docket that Judge Hall received any request for a mental evaluation.

10

Finally, with respect to the actual innocence exception, Petitioner has not presented any evidence, much less new evidence, to suggest that he did not commit the offense to which he pled guilty such that no reasonable juror would have convicted him. McQuiggin, 133 S.Ct. at 1933. On the contrary, Plaintiff's own testimony at the change of plea hearing is thorough and proves that he did, in fact, commit the crime to which he pled guilty. (See Rule 11 Tr., pp. 18-19.) Accordingly, Petitioner has failed to overcome the procedural bar for his claims that Judge Hall erred by (1) not permitting defense counsel to seek a mental examination of Petitioner and (2) relying on Petitioner's own statements as to his mental state rather than those of a psychiatric expert in assessing Petitioner's competence to plead guilty.

### C. Petitioner's Claim Concerning the Government's Alleged Lack of Proof Is Procedurally Barred.

Here, common sense suggests that the issue of whether the government proved Plaintiff's status as a previously convicted felon in possession of a firearm could have been easily reviewed on appeal without further factual development. Petitioner does not contend otherwise. Therefore, his claim was "available" on direct appeal and is not cognizable unless Petitioner can overcome the procedural bar by establishing cause and prejudice or by showing actual innocence. See Brown, 720 F.3d at 1333; McKay, 657 F.3d at 1196.

Petitioner has not alleged any external impediment as a cause of his failure to assert this claim on direct appeal. Weeks, 52 F.3d at 1561. Additionally, as discussed in Section II.B, *supra*, Petitioner cannot demonstrate actual prejudice based on this alleged error because Petitioner himself admitted under oath, and the PSI confirms, that he was a previously convicted felon in possession. (See Rule 11 Tr., pp. 18-19; PSI ¶¶ 25-31.) "[S]olemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74; see also Stitzer,

11

785 F.2d at 1514 n.4. Further, Petitioner has not presented any evidence, much less new evidence, to suggest that he was not a previously convicted felon or that he was not in possession of a firearm, such that no reasonable juror would have convicted him. McQuiggin, 133 S.Ct. at 1933. Petitioner thus fails to satisfy the actual innocence standard. Walters v. United States, 13-14224, 2014 WL 4746772, at *3 (11th Cir. Sept. 25, 2014) ("[A]ctual innocence means factual innocence, not mere legal insufficiency.").

Accordingly, Petitioner has failed to overcome the procedural bar for his claim that the government failed to prove that he had a prior felony conviction.

### D. Petitioner Is Not Entitled to Relief on His Ineffective Assistance of Counsel Claim.

Because Petitioner was not required to raise on direct appeal his single claim of ineffective assistance of counsel, the claim is not procedurally barred and is properly before this court for collateral review. See United States v. Arango, 853 F.2d 818, 823 (11th Cir. 1988) (holding claims of ineffective assistance of counsel are "properly raised by collateral attack in the district court"); Massaro, 538 U.S. at 509. However, for the reasons discussed below, Petitioner is not entitled to relief on this claim.

#### 1. Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003). Petitioner must show that counsel was constitutionally ineffective under the two prongs of Strickland by proving defense counsel's performance was deficient and prejudicial. Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to

12

the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694). As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012), cert. denied, 133 S. Ct. 484 (2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Id. at 56-59.

### 2. Petitioner Has Not Shown Entitlement to Relief Based on the Claim of His Retained Counsel Failing to Move for a Mental Health Examination.

Petitioner fails to satisfy either prong of the Strickland standard with respect to his claim that Mr. Johnson should have requested a mental health examination in light of Petitioner's prior diagnosis of depression and his taking of medication for depression. First, Petitioner cannot show Mr. Johnson was deficient in not requesting a mental health examination. All parties, including Mr. Johnson, were aware of Petitioner's diagnosis and treatment for depression, but there was no evidence in the record, nor does Petitioner point to any evidence, that his depression impaired his competence or called into question his sanity at the time of the offense. See Holladay v. Haley, 209 F.3d 1243, 1250 (11th Cir. 2000) ("[C]ounsel is not required to seek an independent evaluation when the defendant does not display strong evidence of mental problems").

In Bertolotti v. Dugger, 883 F.2d 1503 (11th Cir. 1989), the Eleventh Circuit discussed what types of evidence of mental instability require defense counsel to seek the assistance of a

14

mental health expert. That petitioner argued defense counsel disregarded the following signs of mental deficiencies: defendant claimed during his confession he did not know what was happening to him during the crime, defendant's explanation of the crime was inherently unbelievable, defendant's girlfriend told defense counsel defendant he had a split personality and needed psychiatric help, police placed defendant under psychiatric observation while awaiting trial, and the number of stab wounds in the victim indicated mental instability. Id. at 1510-16. However, the Eleventh Circuit found that defense counsel was not deficient for failing to hire a mental health expert because the evidence was "sufficiently equivocal that reasonable counsel would not have been under a duty to secure a psychiatric examination." Id. at 1514. Indeed, the Eleventh Circuit found that the alleged signs of mental deficiencies were belied by facts that showed the defendant appreciated the criminality of his conduct. Id.

Here, Petitioner's condition and alleged signs of mental instability pale in comparison to the Defendant in Bertoletti. Indeed, Petitioner merely alleges that he suffers from depression, not a split personality. While Petitioner claims to have undergone treatment for depression at Serenity, personnel at this facility were unable to locate any records for Petitioner when contacted by the United States Probation Office. (PSI ¶ 41.) Also, Petitioner's explanation of the crime was cogent, thoughtful, detailed, and emphasized mitigating facts. Petitioner was never placed under psychiatric observation while awaiting trial, nor did any facts of Inv. Swint's stop suggest Petitioner had any mental instability.

Instead, like in Bertoletti, the evidence shows that Petitioner appreciated the criminality of his conduct. Petitioner was consistent in his explanation concerning the struggle with Inv. Swint, testifying that the other individual stopped by Inv. Swint gave him the firearm and he was

not trying to assault Inv. Swint, but admitting that he was in possession of the firearm and had at least one prior felony conviction. (Rule 11 Tr., pp. 18-19; PSI ¶¶ 12; Sent. Tr., p. 9.)

Furthermore, Petitioner responded intelligently and appropriately to questions raised by Judge Hall at his change of plea hearing and sentencing, and in the interview with the probation officer. At his change of plea hearing, Petitioner testified under oath that he had previously received treatment and medication for depression, but was not on any medication during that hearing and clearly understood where and why he was in the hearing. (Rule 11 Tr., pp. 7-8.) Additionally, Petitioner testified under oath that he was satisfied with the assistance he had received from Mr. Johnson. (Id. at 8-9.) For all of these reasons, a reasonable lawyer in Mr. Johnson's position would not have suspected that Petitioner was incompetent and would not have sought a mental health examination.

Second, Petitioner cannot show that he was prejudiced in any way by Mr. Johnson's failure to request a mental health examination. Indeed, Petitioner has not asserted that, but for counsel's alleged error in not requesting a mental health examination, he would not have pled guilty and would have insisted on going to trial. Hill, 474 U.S. at 58-59. Instead, Petitioner merely contests the sentence he received. (Doc. no. 1, pp. 7.) A failure to allege prejudice is independently fatal to Petitioner's claim. Hill, 474 U.S. at 60. However, even if Petitioner had alleged prejudice, for the reasons set forth above, there is no reasonable probability that, had counsel requested a mental health examination, the result of the proceeding would have been different.

In sum, Petitioner's claim that Mr. Johnson was ineffective because he failed to request a mental health examination is without merit and his § 2255 motion should be denied.

### III. CONCLUSION

For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 5th day of November, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA